**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK R. McCRACKEN,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant.<br>_____/ | CASE NO. 1:10-cv-01795-AWI-SMS<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT THE COURT AFFIRM THE AGENCY'S DENIAL OF BENEFITS AND ORDER JUDGMENT FOR THE COMMISSIONER |

Plaintiff Jack McCracken, by his attorneys, Milam Law, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act (42 U.S.C. § 301 *et seq.*) (the "Act"). The matter is currently before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge. Following review of the record as a whole and applicable law, the undersigned recommends that the District Court affirm the agency's determination to deny benefits to Plaintiff.

**I.      Administrative Record**

    **A.      Procedural History**

Plaintiff was insured under the Act through December 31, 2006.

///

1    On October 8, 2002, Plaintiff filed for disability insurance benefits and supplemental
2 security income, alleging disability beginning August 18, 2001.  In a hearing decision dated April
3 14, 2004, Administrative Law Judge Daniel G. Heely found Plaintiff not disabled.
4    On August 9, 2004, Plaintiff filed for a period of disability, disability insurance benefits,
5 and supplemental security income, alleging disability beginning September 18, 2001.  His claim
6 was denied initially and upon reconsideration.  On August 23, 2006, applying *Chavez v. Bowen*,
7 844 F.2d 691, 693 (9th Cir. 1988), Judge Heely denied both  Plaintiff's request to re-open the prior
8 determination or decision, and the then-pending application.
9    On March 12, 2008, in the application that is the subject of this action, Plaintiff filed for
10 disability insurance benefits, alleging disability beginning August 24, 2006.   His claim was
11 initially denied on June 2, 2008, and upon reconsideration on September 2, 2008.  Plaintiff
12 appeared and testified at a hearing on September 3, 2009.  On January 19, 2010, Administrative
13 Law Judge Laura Speck Havens denied both Plaintiff's request to re-open the prior determination
14 or decision, and the then-pending application.  Plaintiff appealed to the Administrative Council,
15 which denied his request for review on July 29, 2010.  On September 29, 2010, Plaintiff filed his
16 District Court complaint.
17    As a result of a separate application, Plaintiff was found eligible for supplemental security
18 income beginning July 1, 2008.  Doc. 15 at 4.
19    **B.** **Agency Record**
20       **1.** **2002 Application**
21    Plaintiff's prior jobs included truck driver, utility pole climber, a tree crew foreman,
22 apprentice roofer, and scraper operator.  Plaintiff reported that he performed yardwork for his
23 wife's clients including cutting grass, pruning trees, and other activities requiring heavy exertion.
24 Judge Heely observed that although the part-time nature of the work and insubstantial earnings
25 did not render this work substantial gainful activity, it reflected Plaintiff's physical abilities.
26    Plaintiff reported back pain resulting from multiple employment injuries in the 1990's.
27 Plaintiff submitted to a course of treatment with a chiropractor, who assured Plaintiff that after
28 completion of the treatment, Plaintiff would be able to return to work. Although most of

Plaintiff's chiropractic treatment occurred before he stopped working, on November 7, 2001, the chiropractor opined that Plaintiff could no longer work full time as a tree trimmer even though he could perform some of that job's duties. The chiropractor recommended vocational rehabilitation services and retraining for other work.

In June 2003, neurologist Erik Roberson performed a comprehensive orthopedic evaluation. Plaintiff demonstrated no difficulties walking, getting on and off the examining table, or removing his socks and shoes without assistance. He sat comfortably. Plaintiff had a full range of movement, and straight-leg raising and reflexes were normal. Plaintiff demonstrated no neurological defects. Roberson opined that claimant had no neurological deficits and could perform medium work so long as he avoided frequent bending or stooping.

Following her evaluation, agency consultant Dr. Ida Newton diagnosed back strain but opined that Plaintiff could perform medium work that did not require bending or stooping.

In reaching his conclusion that Plaintiff did not have a severe impairment of combination of impairments, Judge Heely summarized Plaintiff's testimony:

> At the hearing the claimant alleged chronic back pain that radiates into his hips. He did not allege any other medical impairment. He is not seeking regular medical treatment. He last saw a doctor approximately a year prior to the hearing. He does not take any prescribed medication due to financial hardship. He testified he could lift up to 50 pounds occasionally and up to 100 pounds on a one-time basis. He performs extensive home exercises. He drives his wife to work on a daily basis. His daily activities also include strength training with free weights including doing arm curls and lifting weights of 35-40 pounds frequently. He does mule kicks in multiple sets. He described other exercises that involve using a rubber ball and doing about 25-30 pushups daily. He performs yard work at home and at his wife's clients' homes. He prunes fruit trees and operates a power mower. He does yard work for 1-2 hours per day. His wife's clients pay her an extra $10 to $15 per week for the yard work.

AR 43.

Judge Heely found Plaintiff's testimony that he was not able to work to be not credible. He summarized:

> It is my conclusion the claimant has no severe impairment or combination of impairments. He alleged back pain with radiation into the hips, worse on the left side. However, there is no x-ray, MRI scan or physical evidence of a significant back impairment that would cause radiculopathy. There is no EMG study confirming radiculopathy. The orthopedic examinations were within normal limits. The claimant's treatment has been conservative. Surgery has not been

advised. He has not undergone any treatment in the past year. He does not take prescription medication. He does not receive chiropractic manipulations or attend a pain management clinic. His physicians found him capable of performing medium to heavy work. At most his chiropractor precluded him from his past work, which was in the heavy range of exertional activity. The claimant described numerous daily activities that are consistent with an ability to perform medium or heavy work including lifting weights of up to 100 pounds and extensive home exercises. He also performs heavy yard work on a daily basis. He drives his wife to work daily and, until recently, attended a gym regularly. His allegation that he cannot afford medical treatment was not credible. The lack of medical treatment and his admissions regarding his daily activities severely undermined claimant's credibility. The claimant has no severe impairment or combination of impairments and he is not disabled.

AR 43-44.

### 2.     2004 Application

Judge Heely found that Plaintiff demonstrated no change of circumstances and thus, continued to be not disabled within the meaning of the Act. He summarized records of Plaintiff's medical treatment that indicated that no objective findings supporting Plaintiff's claim of lower back pain and repeatedly reported that Plaintiff had no functional limitations. The ALJ found that no objective testing had been performed since the prior decision.

The judge questioned Plaintiff's credibility, noting that Plaintiff failed to respond to the agency's request that he explain the existence of a business called "Rug Doctor Pro," which had the same address as Plaintiff's home. The hearing decision noted multiple instances in which Plaintiff failed to follow medical directions including to stop using tobacco, to continue physical therapy, to re-start exercise, and to attend diabetic counseling. The judge observed:

> I do not find claimant's testimony fully credible. First, I note that while claimant alleges his activities of daily living are substantially restricted, at the prior hearing held before me on January 27, 2004 the claimant admitted he could lift up to 50 pounds occasionally and up to 100 pounds on a one-time basis. He was taking no prescription medication. He stated that he performed extensive home exercises, drove his wife to work, lifted weights, performed mule kicks, performed yard work at both his own house as well as the home of his wife's employer for 1 to 2 hours per day. He pruned fruit trees and operated a power mower. 9 months later the claimant painted a different picture in a statement to the Administration (Exhibit 4E). He indicated that he could not sit for more than 15 minutes or walk for more than a quarter mile. While he admitted that he continued to do yard work, he stated he had to break the work up over 2 to 3 days. He alleged that he was unable to climb stairs and that he could only lift light things, and that his wife had to help load and unload the groceries.

///

> I do not find the claimant's allegations credible. There is simply nothing to explain the increase in the claimant's symptoms. There is no evidence that he sustained any injury, not is there any reason to explain the increase in his subjective complaints. He did begin seeing a doctor after the prior hearing, and did make subjective complaints, yet no objective testing has been performed. The lack of an explanation for the alleged severe decline in the claimant's activities of daily living leads me to conclude that the claimant is exaggerating the extent of his limitations, and is utilizing the prior decision as a roadmap. He apparently has realized that his candid admissions at the prior hearing were detrimental to his allegations of disability.

AR 52-53.

The ALJ continued to discuss numerous specific inconsistencies between Plaintiff's testimony and the agency record.

### 3. Current (2008) Application

Plaintiff (born June 25, 1949) completed high school and nearly three years of college. He served in the military from December 1967 to August 1971. He read the newspaper and could perform simple addition and subtraction. He did not work outside his home after August 24, 2006. His prior work included driving a water truck (2000-2001), trimming trees (1991-2001), and climbing telephone poles (2001). Plaintiff reported that he quit his last job on September 18, 2001.

Plaintiff testified that on a typical day, he awoke at about 6:00 a.m. He was usually able to bathe and dress himself. After breakfast, he typically would putter about the yard pulling weeds He helped his wife with household chores, occasionally washing dishes or helping with shopping; watched television; and did his exercises for physical therapy. Plaintiff was able to drive a manual-shift car for 40 to 45 minutes before needing a break.

Plaintiff testified that he suffered from degenerative disc disease, arthritis, diabetes, high blood pressure, and hepatitis C. He experienced constant sharp, hot, burning pain constantly in his mid-back and during flare-ups, in his lower back and left hip. The pain ranged from 2 to 8 on a scale of 10. Plaintiff saw a doctor every three months. He took prescriptions for high blood pressure and diabetes but did not take pain relievers. He relieved his back pain with heat, ice, and a TENS unit. Plaintiff especially liked a heating pad that fit his lounge chair.

///

Plaintiff testified that he could walk for 20 to 30 minutes on soft level ground and for less time if the terrain was rough.  He could sit for no more than 30 to 60 minutes.  If he lifted more than fifteen pounds, he was likely to injure himself.

**Exertional Daily Activities Questionnaire.**  Plaintiff reported that he tried not to lift anything, but that if he had to lift, he lifted only once.  He tried not to carry anything and carried nothing further than from the car to his home.  He could drive a manual-shift cart for one hour before needing to stop and get out.  Plaintiff slept for two three-hour periods and took a two-hour nap daily.

Plaintiff reported that he avoided doing most chores that he could perform before he became disabled. A one-to-two-hour task took him days of painful work to accomplish.  At his best, he could work for an hour or two; when his pain was bad he could work for only 20 minutes. He used a self-propelled lawn mower for no more than 20-30 minutes.

Plaintiff reported constant pain in his lower back and hips, which was aggravated by activity.  He experienced sharp shooting pains four to six times a day.  Plaintiff had recently developed pain and numbness in his left arm and hand.  Movement of his neck was painful and limited.  His medications were ibuprofen, Naprosin, and Vicodin.  He also used hot and cold compresses and a TENS machine.

In 2003, Plaintiff was able to walk one mile in 30 minutes on a treadmill.  He can now to walk no more than 10 minutes and 1/4 mile.  Plaintiff employed numerous therapy routines to maintain mobility and lessen the severity of his pain.  As of the end of 2007, he was daily performing 40 therapy routines plus exercising and stretching. Plaintiff appended to the questionnaire print-outs of his therapy routines, including "Pelvic & Trunk Stabilization Exercises–Gym Ball" and "Lift and Firm Your Butt," as well as various physical therapy routines, some of which were specifically prepared for Plaintiff.  *See* AR 153-161.

Plaintiff summarized, "Under these conditions it is impossible to hold a job."  AR 147.

**Valley Heart Associates and Doctors Medical Center.**  Plaintiff submitted medical records from these providers in conjunction with his 2008 treatment for asymptomatic coronary

6

artery disease, lower extremity atherosclerosis, dyslipedemia, and carotid artery disease. These records do not relate to the time period that is the subject of this application.

**Health Services Agency, Modesto, CA.** The portion of these records corresponding to the time period relevant to this application noted that Plaintiff's Hepatitis C, hypertension, and diabetes were stable. Plaintiff had good control of his diabetes.

Doctors discovered a sigmoid colon lesion in the course of a colonoscopy in October 2006. A subsequent biopsy revealed that the lesion was benign.

On November 7, 2006, Plaintiff requested another doctor. The treatment notes reported:

> [Patient] is very upset re: patient's back problem [with physical therapy]. "I want to talk to [physical therapy], why they said I had improved from [physical therapy]. I am not!!! It helps. I want to find another doctor. I want Disability."

AR 236.

X-rays of Plaintiff's lumbar spine taken November 8, 2006, revealed advanced degenerative disc disease at L5-S1 which had not changed since December 3, 2004. Sacrum and coccyx x-rays were normal.

On December 19, 2006, Plaintiff complained that is back pain was gradually worse. The treatment notes reported a full range of motion in Plaintiff's head, neck, and back with no motor/sensory deficit.

**Modesto Radiology Imaging.** The record includes reports from Modesto Radiology Imaging that relate to a time period after that at issue in this application.

**Dr. Fast.** On May 13, 2008, on behalf of the agency, Roger D. Fast, M.D., analyzed Plaintiff's residual functional capacity as it related to peripheral vascular sufficiency. No evidence in the agency record indicates that Plaintiff's peripheral vascular insufficiency was diagnosed before December 31, 2006.

**Dr. Wong.** On August 29, 2008, E. Wong, M.D., analyzed Plaintiff's medical records for the agency with regard to degenerative disc disease, arthritis, glaucoma, and diabetes. Wong noted inconsistencies between the reports and Plaintiff's allegations, and questioned Plaintiff's credibility. Wong noted that, although medical records indicated Plaintiff had degenerative disc

disease, his neural examination was normal and the records showed no prescription pain medications. His diabetes and hypertension were under control. Accordingly, Dr. Wong indicated Plaintiff's impairments were not severe.

## II. Legal Standards

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering age, education, and work experience, engage in any other substantial gainful work existing in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f). The process requires consideration of the following questions:

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1996).

In addition, when an applicant has one or more previous denials of applications for disability benefits, he or she must overcome a presumption of nondisability. The principles of *res*

*judicata* apply to administrative decisions, although the doctrine is less rigidly applied to administrative proceedings than in court. *Chavez*, 844 F.2d at 693; *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988). Social Security Acquiescence Ruling ("SSR") 96-4(9), adopting *Chavez*, applies to cases involving a subsequent disability claim with an unadjudicated period arising under the same title of the Social Security Act as a prior claim in which there has been a final administrative decision that the claimant is not disabled. A previous final determination of nondisability creates a presumption of continuing nondisability in the unadjuducated period. *Lester*, 81 F.3d at 827. The presumption may be overcome by a showing of changed circumstances, such as new and material changes to the claimant's residual functional capacity, age, education, or work experience. *Id.* at 827-28; *Chavez*, 844 F.2d at 693.

**2004 Decision.** In a hearing decision dated April 14, 2004, Judge Heely found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 18, 2001. He did not have a severe impairment or combination of impairments that significantly limited his ability to perform basic work activities. Accordingly, the ALJ concluded that Plaintiff was not disabled.

**2006 Decision.** Judge Heely initially determined that no reason existed to re-open the prior determination. He then found that Plaintiff had failed to demonstrate changed circumstances to establish a severe impairment or combination of impairments that significantly limited his ability to perform basic work activities. Accordingly, the ALJ concluded that Plaintiff continued to be not disabled under the act.

**2008 Decision.** Judge Havens found no basis to reopen or revise a prior determination or decision. Applying *Chavez*, 844 F.2d at 691 and Acquiescence Ruling 97-4(9), she concluded that Plaintiff failed to overcome the presumption of nondisability.

### III.  Scope of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, a court must determine whether substantial evidence supports the Commissioner's decision. 42

U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards, and if the ALJ's findings are supported by substantial evidence. *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987).

### IV.     Did Plaintiff Demonstrate a Change of Circumstances?

"The principles of *res judicata* apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." *Chavez*, 844 F.2d at 693. To overcome the presumption of continuing nondisability that arises from the prior administrative law judge's findings of nondisability, a claimant must prove changed circumstances indicative of disability. *Id.* The presumption of *res judicata* does not apply when a claimant has demonstrated changed circumstances. *Lester*, 81 F.3d at 827.

Changed circumstances may include a change in the severity of the claimant's alleged impairment, a change in the claimant's age, or the development of a new or additional impairment. *Id.* at 827-28. For example, Mr. Lester alleged increased age that moved him into a different age category and the development of a mental impairment after he was previously denied disability benefits. *Id.* at 828. *See also Vasquez v. Astrue*, 572 F.3d 586, 597-98 (9th Cir. 2009) (alleging changed age and subsequent development of a mental impairment). Mr. Chavez also alleged increased age. 844 F.2d at 693.

Plaintiff claims that, because he too demonstrated changed circumstances, Judge Havens erred in applying *res judicata*. In support of his contention, Plaintiff argues (1) that changed

circumstances existed in his having been diagnosed with peripheral vascular disease, degenerative disc disease in his cervical spine, and a shoulder impairment; (2) that the severe impairments (peripheral vascular disease, degenerative disc disease in his cervical spine, and a shoulder impairment) that led to his qualifying for SSI beginning July 31, 2008, should have qualified him for disability insurance for the period from August 24 through December 31, 2006; and (3) that the November 8, 2006 x-rays that revealed advanced degenerative disc disease at L5-S1 constituted a changed circumstance.

The time period at issue in this appeal is August 24 through December 31, 2006.  An individual seeking disability insurance benefits bears the burden of proving that he became disabled before the date on which his disability insured status expired. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996); *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1463 (9th Cir. 1995).  Because Plaintiff failed to introduce any evidence that he was diagnosed with peripheral vascular disease, degenerative disc disease in his cervical spine, or shoulder impairment prior to December 31, 2006, when his disability insured status expired, his later development of these impairments did not retroactively entitle him to disability insurance benefits. The development of severe impairment that results in a claimant's disability at a time after the expiration of his disability insured status does not relate back to entitle him to disability insurance benefits. *Id.* at 1458.

That Plaintiff's undated disability report listed his medications as aspirin (heart), avodart (enlarged prostate (BPH)), cosaft (glaucoma), ibuprofen (pain), lisinopril (hypertension), metformin (diabetes) naproxen (pain), and vicodin (pain) (*see* AR 142) does not overcome the untimeliness of the medical reports regarding peripheral vascular disease and other impairments identified only after December 31, 2006.  That disability report also indicated Valley Heart Associates as treating physician beginning in February 2008. AR 141.  Medical reports from the period at issue in this case indicate that Plaintiff's medications from August through December 2006 were metformin (diabetes), avodart (BPH), lipitor (elevated cholestrol), lisinopril (hypertension), albuterol MDI (asthma), combivent MDI (asthma), asopat (glaucoma) and zilatin

(glaucoma). *See* AR 234-238. Because no evidence supported Plaintiff's contention that he was taking prescription pain medications during the relevant time period, Judge Havens properly disregarded evidence of impairments with which Plaintiff was diagnosed as the expiration of his disability insured status.

Plaintiff's contention that the November 2006 x-rays showing advanced degenerative disc disease at L5-S1 constituted changed circumstances is similarly not persuasive. The diagnostic imaging report specifically compared the November 14, 2006 x-rays to x-rays taken December 3, 2004, and stated the following impression:

> No change. Advanced degenerative disc disease at L5-S1 associated with facet arthropathy. No interval change.

AR 284.

The December 2004 x-rays revealing advanced degenerative disc disease at L5-S1 related to the time period that Judge Heely considered in his August 2006 hearing decision. Plaintiff, then represented by the same counsel, did not appeal the 2006 hearing decision, which then became final. Since Plaintiff's condition in November 2006 was unchanged from his condition in December 2004, the November x-rays did not establish the changed circumstances necessary to defeat Judge Haven's application of *res judicata*. The ALJ did not err by not treating the November 2006 x-rays as evidence of changed circumstances.

## VI. Summary and Recommendation

A review of applicable law and facts indicates that the ALJ appropriate determined that Plaintiff failed to demonstrate the changed circumstances necessary to overcome the application *res judicata*. Accordingly, the undersigned recommends that the District Court affirm the Commissioner's determination that Plaintiff was not disabled during the period from August 24 through December 31, 2006.

These Findings and Recommendations will be submitted to the Honorable Anthony W. Ishii, United States District Judge, pursuant to the provisions of 28 U.S.C § 636(b)(1). On or before June 15, 2012, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is

advised that, by failing to file objections within the specified time, he may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   May 15, 2012**                        /s/ **Sandra M. Snyder**
UNITED STATES MAGISTRATE JUDGE